CAROLINE F. WURDEMANN, by her next friend, FRED S. BERNER, complainant,

*v.*

WILLIAM H. WURDEMANN, FRED C. VAN KEUREN, PERCY L. PROCTOR, RIVERSIDE COAL AND SUPPLY COMPANY and VAN KEUREN AND SON, defendants.

[Decided April 24th, 1930.]

*Mr. Charles F. Black,* for the complainant.

*Messrs. Lehlbach, Johnson & Ormond,* for the defendants.

BACKES, V. C.

The bill is to rescind a series of transactions on the ground of fraud.

The complainant and her husband held the entire issue of capital stock of the Riverside Coal and Supply Company—the complainant sixty-four shares, her husband five, and a dummy one. The company carried on business at Lyndhurst on a plot known as the "dock" property on the Passaic river. The husband was in charge. In 1925 the company was desperately in need of financial assistance. Its assets, aside from the dock property—said to be worth $30,000, mortgaged for $10,000— were worth $24,000, book value; yard equipment made up $15,750 of the assets. There was little cash; merchandise accounts and notes receivable amounted to $8,000. Pressing liabilities were $18,000. Frederick C. Van Keuren, owner of Van Keuren & Son, a corporation engaged in the same line, coal and building supplies, in Newark, agreed to aid with money and credit upon this arrangement; ten shares of the stock were issued to him (one to a dummy director) and Mr.

Wurdemann retained his five. Mrs. Wurdemann surrendered her holdings, and, for doing this, the dock property was conveyed to Van Keuren in trust, to convey it to her in six years upon Van Keuren's being repaid and indemnified, and subject to Van Keuren's right to mortgage it to raise funds for the company. It was, evidently, the hope and expectation, at that time, that the company could work out its salvation in six years so that, by then, Van Keuren would own two-thirds and Wurdemann one-third of a successful business and Mrs. Wurdemann would have the dock property. Van Keuren and his company furnished a large amount of material and credit; Wurdemann ran the business. A year later (1926) the dock property was reconveyed to the company to strengthen its financial standing. Van Keuren surrendered his preferential right to indemnity and Mrs. Wurdemann her equity, if any remained, upon agreement that the property should be reconveyed to Van Keuren and the *status quo ante* restored if the company did not in the ensuing three years manage the dock property with financial success according to standard fixed in the agreement. The dock property had on it coal pockets, a warehouse, and two or three dwellings, more or less dilapidated, but usable and rentable. A year later (1927) the company executed to Van Keuren & Son, a mortgage on the dock property for $20,500, for money to pay debts. It was consented to by Mrs. Wurdemann. At the same time there was assigned to Van Keuren & Son an existing mortgage on the property of $4,500, evidently purchased with company funds. Wurdemann was discharged as manager in 1928. Thereupon this bill was filed to rescind the arrangements and to set aside the conveyance and mortgage and to declare void the agreements resulting in the reorganization of the company in 1925, the reconveyance to the company of the dock property in 1926 and the execution of the mortgage in 1927, all of which Mrs. Wurdemann now claims were obtained from her under duress, in that Van Keuren held out to her that her husband was criminally liable for failure to return federal income tax reports of the company for some years past, and that he would hold the dock property in trust for six years so that the government could not reach it, and that

through fear of her husband's arrest she made the first bargain; that a year later, when she consented to a reconveyance of the dock property to the company, he alarmed her with the same threat to her husband's liberty and also falsely reported an impending foreclosure of a prior mortgage, and that when she consented to the mortgage to Van Keuren & Son in 1927 he again menaced her with danger of her husband's going to jail.

It may be that Mrs. Wurdemann, a housewife, did not understand the intricacies of the legal documents, but she understood the scheme, always. The documents were explained to her by counsel of integrity, and she comprehended; she was not imposed upon and it is the sympathetic view of the court that her claim is the urge of a distressed mind, desperate and despairing. Van Keuren was prosperous, in a successful business, and had no designs on her company's business. He was willing to help in the rescue, and, of course, profit by it, if successful; the complainant understood that. He ventured his money and merchandise depending on the company's assets which included the dock property. The conveyance of the dock property was to secure him if his endeavors failed. The surrender by the complainant of her holdings and the reorganization of the company was to insure his profit if he succeeded. He would have had the same security had he advanced the money without the deed and mortgage, and if the transactions be voided and the deed and mortgage set aside, the dock property stands as his security, for it will revert to the company, not to the complainant; and he is the only substantial creditor.

At the hearing Van Keuren offered to restore the *status quo ante* upon the payment of the moneys due to him, now $41,000 plus, and later submitted the offer in writing. Nothing could be fairer. The complainant declined or was unable to accept. She must do equity before she can hope to enjoy equity.

The court will entertain the offer and a decree will be entered that the transaction in all its phases be undone upon payment to Van Keuren what is due him, and upon failure to pay within sixty days the bill will be dismissed.